# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**MARY SOMRAK,**

    **Plaintiff,**

    v.

**KROGER, CO.,**

    **Defendant.**

Case No. 17-2480-CM

## MEMORANDUM & ORDER

Plaintiff Mary Somrak brings this diversity action against defendant Kroger, Co. for negligence after she slipped and fell in a Dillon's grocery store. This case is now before the court on defendant's Motion for Summary Judgment (Doc. 54). Defendant argues that plaintiff cannot hold it liable for any torts committed by Dillon Companies, Inc. ("Dillon"), which is a wholly owned subsidiary of defendant. For the reasons stated below, the court grants defendant's motion.

**I.    Background**

On September 10, 2015, plaintiff was shopping at a Dillon's grocery store in Salina, Kansas. After plaintiff checked out at one of the self-checkout counters, she slipped, fell, and cut her left hand on a jar of spaghetti sauce that had broken during the fall.

Plaintiff brought this suit against defendant claiming negligence and willful and wanton conduct. Defendant maintains that it is the parent company of Dillon—who operates Dillon's grocery stores—and is therefore not liable for any tortious act of its subsidiary and its subsidiary's employees. According to defendant's in-house counsel, Dillon is a limited liability company formed in the State of Kansas and is a wholly owned subsidiary of defendant. Dillon is responsible for the day-to-day management of its stores—including the Salina store at issue—and is responsible for the employment decisions regarding

employees at Dillon's stores in Kansas. According to a filing from the Kansas Secretary of State, Dillon is incorporated in Kansas.

Brenda Willey, a Dillon's store employee, was responsible for monitoring the self-checkout lanes and was working on the day of the incident. Plaintiff provided Willey's W-4 forms from 2007, which indicate she is employed by defendant. Plaintiff also provided a number of documents and materials used at the Dillon's store at issue that contain defendant's logo. These include the incident report used after the incident, a safety requirement poster used at the store, and records from a safety program utilized by defendant and implemented at the Dillon's store at issue.

## II. Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party demonstrates an absence of evidence in support of an element of the case, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The nonmoving party "may not rest upon the mere allegations or denials of his pleading." *Id.*

In making the summary judgment determination, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient

disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

**III.    Analysis**

Defendant claims it is entitled to summary judgment because it is not liable for any injury plaintiff sustained at a store operated by Dillon, its wholly owned subsidiary. Defendant argues plaintiff has not shown any reason that this court should pierce the corporate veil and hold it liable for the negligence of its subsidiary. Plaintiff, however, maintains it is not necessary to pierce the corporate veil because defendant is the real party in interest. Plaintiff claims that Willey is an employee of defendant, and defendant is therefore liable for her negligence under a theory of respondeat superior. Plaintiff also argues that evidence shows that defendant was directly involved in the operation and management of the Dillon's store at issue.

Plaintiff claims that defendant's negligence caused the injuries she sustained when she fell. In order to establish negligence under Kansas law, the plaintiff must prove: (1) the defendant owed a duty to the plaintiff; (2) the duty was breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff sustained damages. *Adams v. Bd of Sedgwick Cnty. Comm'rs*, 214 P.3d 1173, 1179 (Kan. 2009). Defendant essentially argues it is entitled to summary judgment because any duty owed plaintiff was owed only by its subsidiary.

It is undisputed that Dillon is a wholly owned subsidiary of defendant. A subsidiary corporation is a corporation "in which a parent corporation has a controlling share." CORPORATION, Black's Law Dictionary (10th ed. 2014). "A corporation holding stock in another corporation stands in the same relation as a stockholder." *Dean Operations, Inc. v. One Seventy Assocs.*, 896 P.2d 1012, 1016 (Kan. 1995). And "[t]he fact that one corporation owns the controlling stock of another does not destroy the identity of the other corporation as a distinct legal entity." 18A Am. Jur. 2d Corporations § 727.

Therefore, liability is not ordinarily imposed upon a parent corporation for the torts of its subsidiary. *Id.*; *see also Dean Operations*, 896 P.2d at 1016 ("In the absence of fraud or other invidious and vitiating circumstances, the fact that one corporation is instrumental in the formation of another corporation and owns nearly all of the stock of the latter corporation does not have the legal effect of making the parent corporation liable for the debts of the subsidiary corporation.").

The "fiction" of two separate corporate identities, however, "will not be extended to permit one of the corporations to evade its obligations; to promote fraud, illegality, or injustice; or to defend crime." *Id.* In circumstances such as these, a parent company may be considered an "alter ego" of its subsidiary and may be held liable for the acts of the subsidiary. The alter ego concept is well-established in Kansas law, but "examples of its application in a parent-subsidiary corporate context are scarce." *Id.*

Kansas uses a number of factors to determine whether a subsidiary corporation is an instrumentality of the parent corporation:

(1) whether the parent corporation owns all or a majority of the capital stock of the subsidiary;

(2) whether the corporations have common directors or officers;

(3) whether the parent corporation finances the subsidiary;

(4) whether the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise causes its incorporation;

(5) whether the subsidiary has grossly inadequate capital;

(6) whether the parent corporation pays the salaries or expenses or losses of the subsidiary;

(7) whether the subsidiary has substantially no business except with the parent corporation, or no assets except those conveyed to it by the parent corporation;

(8) whether in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division;

(9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and

(10) whether the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Id.* at 1017.

Plaintiff argues that the court does not need to apply these factors, arguing instead that defendant actually has direct involvement in the Dillon's store operation as evidenced by the fact that Kroger-branded posters regarding employee safety were displayed at the Dillon's store, that the Dillon's store uses the Kroger-adopted safety program, and that Kroger's name appears on incident report procedure forms. But plaintiff has not provided any authority that this evidence is conclusive that defendant, in fact, operates Dillon's stores. The evidence shows that Dillon is a separate corporate entity, formed under the laws of the State of Kansas. Dillon elects its own officers, has its own separate Board of Directors, and is responsible for the day-to-day management of its stores. Plaintiff's evidence does not overcome the undisputed fact that Dillon is a wholly owned subsidiary of defendant and therefore liable for its own torts. And plaintiff has provided no evidence to show that defendant is actually the alter ego of Dillon when applying the *Dean* factors. Further, a statement made by defendant in another case is not conclusive evidence that it is the alter ego of Dillon. That statement alone, that "[d]efendant admits that it is an active corporation in good standing, with its corporate offices in Cincinnati, Ohio, and doing business in the State of Kansas as Dillon Stores," is not an admission of any material fact relevant to this case.

Further, plaintiff has not provided any authority to show that defendant is the employer of Dillon's employees—triggering respondeat superior liability—simply because defendant's name is listed as the employer on the employees' tax documents. Without further evidence or authority, the court will not ignore the well-established principle that a wholly owned subsidiary is still a distinct legal corporation that is responsible for its day-to-day operations, including employment decisions.

The court finds that plaintiff has not met its burden to show that defendant owed her a duty, because Dillon—although a wholly owned subsidiary of defendant—is a distinct legal entity that is liable for its own torts. Plaintiff has not shown that she would be prejudiced or unable to recover from Dillon or that defendant is the alter ego of Dillon. For these reasons, the court finds that defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 54) is granted.

This case is closed. The clerk of the court is directed to enter judgment in favor of defendant and against plaintiff.

Dated April 26, 2019, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**